J. J. McCANN, JOHN H. TREADWELL AND THE ACLINE FARMS, A CORPORATION, *Appellants*, v. NELLIE G. WARE, *Appellee*.

Opinion Filed December 8, 1920.

1. Specific performance of a contract for the sale of lands will not be granted in a case where the vendor is the actor de-

manding the remedy without compensation for an outstanding right in the lands to the extent of an undivided half interest in third persons.

2. A vendor in a contract for the sale of lands who has no title to the lands at the time of the contract made, and such land is afterwards acquired partly by the vendee to such contract from another source and under circumstances which would not preclude him from the favorable consideration of a court of equity, and partly by a third person, is not entitled to a decree in equity requiring the vendee to pay the full purchase price for the half interest held by him upon the theory that such interest is held in trust for the complainant vendor.

An Appeal from the Circuit Court for DeSoto County; John S. Edwards, Judge.

Decree affirmed in part; reversed in part.

*Brown & Jones,* for Appellants;

*Leitner & Leitner,* for Appellee.

ELLIS, J.—The appellee, Nellie G. Ware, exhibited her bill in chancery in the Circuit Court for DeSoto County, against J. J. McCann, John H. Treadwell and the Acline Farms, a corporation, praying that the title to certain lands in that county claimed by Treadwell and the Acline Farms and acquired from the estate of Jacob Edwards be held in trust for the use of complainant and that the defendant McCann be decreed to specifically perform his contract with complainant for the purchase of the lands. The bill alleges that in March, 1911, the complainant owned the lands described in the bill and that she and McCann entered into a written agreement whereby she

agreed to sell and McCann agreed to purchase the land for a certain consideration named in the agreement. That there were some defects in the complainant's title consisting of an "apparent cloud" upon her title in an "outstanding title in the estate of Jacob Edwards" and that "these defects" it was necessary to remove before McCann would accept complainant's title; that it was not agreed who would undertake to remove the defects in complainant's title, but that both of them, complainant and McCann "proceeded at once to perfect the title" by "endeavoring to obtain deeds from the said estate of Jacob Edwards;" that McCann employed J. H. Treadwell to obtain quit-claim deeds from the "estate" of Jacob Edwards; that Treadwell took the title from the heirs of Jacob Edwards in the name of himself and Albert Dewey, but that it was known to all the parties that "this said deed from the estate of the said Jacob Edwards" was obtained to perfect the title of complainant; that Dewey, an officer of the Acline Farms, conveyed the land to that corporation; that McCann was secretary and treasurer of the corporation, and that all the parties to the transaction had full knowledge of the complainant's title, and that the deeds obtained from the Edwards heirs were for her benefit; that when the title of complainant was perfected in this manner she offered to comply with her contract with McCann, who declined to carry out the contract on his part. The bill contains a paragraph in which it is alleged that as Treadwell was attorney for McCann, and as McCann and Dewey were stockholders and officers of the Acline Farms, that Treadwell and the Acline Farms held the Edwards title to the lands in trust for the complainant.

The defendants answered separately. Treadwell in his answer denied the complainant's ownership of the

lands and averred that the complainant's claim of ownership·arose in the following manner: In 1895 the Florida Commercial Company conveyed to J. S. Sandlin, who in October of that year conveyed to W. R. Ware; that in 1911 Ware was declared a bankrupt. J. H. Porter was appointed trustee, who reported to the court that the land, which was wild land, belonged to Nellie G. Ware; that she had purchased it from the true owner; that the bankrupt's title was invalid, but constituted a cloud on the title of Nellie G. Ware; that by order of the referee the trustee sold the land to Nellie G. Ware for fifty dollars. It is averred that at the time Porter as trustee filed his report or petition to the court Nellie G. Ware had no title to the land, either legal or equitable, nor did the estate of the bankrupt W. R. Ware have any interest or title in or to the land; that the Florida Commercial Company, Sandlin's grantor, never had any title; that it belonged to the heirs of Edwards and the Florida Southern Railroad Company, from whom the defendant and Acline Farms bought it without notice of any interest claimed by the complainant. The answer denied that he had any knowledge of the contract between McCann and complainant, or any notice of negotiations between them, until after he had acquired his interest. The answer then continues with a full statement of the defendants' connection with the transaction, which amounted to a complete denial of all allegations in the bill connecting him with the transaction as McCann's attorney, and prays that the deed held by complainant be declared to be a cloud upon his title.

The Acline Farms answered denying the complainant's ownership of the land, made the same averments as to title as were contained in Treadwell's answer, averred that it had no notice of any title in complainant, and

denied McCann's authority to make any such contract with complainant in the defendant's behalf. The answer contained a demurrer to the bill for want of equity, and that it is repugnant to the written instrument attached to it and upon which the suit rests.

The court overruled the demurrer.

J. J. McCann answered the bill, in which he denied the complainant's ownership of the land, and averred that the title was in the heirs of Edwards and in the Florida Southern Railroad Company, from whom Treadwell and the Acline Farms acquired it without notice of complainant's claim, denies the contract for the purchase of the land from Nellie G. Ware, denies knowledge of any effort to obtain the Edwards' title, or that the parties understood that it would be obtained for the benefit of complainant. Denied that he knew complainant, or had ever met or had any acquaintance with her, denied that he employed Treadwell to obtain the Edwards' title, and averred Treadwell's connection with the transaction as the latter had avered it to be in his answer. The answer denied that the Acline Farms took title from Dewey with any knowledge of complainant's claim, or that the complainant ever offered to him a sufficient deed to convey the premises to him in accordance with the terms of the pretended contract. There was a demurrer incorporated in this answer upon the same grounds as that in the answer of the Acline Farms. This demurrer was also overruled.

Testimony was taken before a master and report made in August, 1917. Final decree was entered September 23, 1918. The Chancellor finding the equities to be with the complainant; that Treadwell bought the land without notice of the contract between complainant and McCann;

that the Acline Farms took a half interest in the land
with full notice of such contract which should be speci-
fically performed; that the complainant was the owner
in fee simple of an undivided half interest in the land and
had tendered a good and sufficient deed of conveyance
thereof to the defendant McCann and decreed that he
should accept the deed and pay the full contract price
for the complainant's interest which she was to receive
for the whole interest, together with interest on such
sum from March 31, 1911; that in default of such pay-
ment execution should issue in favor of the complainant
against McCann for the amount of principal and interest
and costs. The bill was dismissed as to Treadwell with-
out prejudice; that the Acline Farms held an undivided
half interest in the land for the use of the complainant.
From this decree the defendants appealed.

The alleged contract which was the basis of this suit
purports to have been entered into between Nellie G.
Ware, a widow, of the County of Fulton, in the State of
Georgia, and J. J. McCann, of DeSoto County, Florida.
It is recited that Mrs. Ware had proposed to sell to
McCann two tracts of land in DeSoto County, aggre-
gating 1202 acres, more or less, for the sum of $7,500.00.
The land was described as follows: All of Section 5, T. 42
S. R. 23 E., containing 642 acres, more or less, and the
east half and east half of west half and northwest quar-
ter of northwest quarter and southwest quarter of south-
west quarter of Section 33, T. 41 S., R. 23 E., containing
560 acres more or less. That McCann had raised a ques-
tion as to the title to the land in Section 33. It was
therefore agreed that Mrs. Ware would execute a deed
to McCann conveying the land in Section 5 for the sum
of $4,006.00, which deed was to contain a "condition"
that Mrs. Ware would sell to McCann "Section thirty-

three (33), containing five hundred and sixty (560) acres, for the sum of three thousand and four hundred and ninety-four ($3,494.00) dollars, and the said McCann accepts said deed contemporaneously with the execution of this contract with the agreement fixed that he shall take said land and pay said sum to said Mrs. Ware upon the removal of the present defects in the title to said Section thirty-three (33)." This contract seems to have been witnessed by J. R. Sandlin and two others, and the execution thereof acknowledged by McCann before Sandlin as a notary public.

It was for the enforcement of this contract in so far only as it applies to the lands in section thirty-three that the suit was begun.

We think the decree was erroneous for several reasons. It is a case in which the vendor is the actor demanding specific performance of the contract without compensation, although there is an outstanding right to the extent of an undivided half interest in the land in a third person which the court found to be the fact, and which the evidence fully sustains.

Now the contract which was attached to the bill as an exhibit and made a part of the bill of complaint, contemplates the conveyance by the complainant of a good title to the entire interest. At the time the contract was executed the vendor was not in a position to comply with it because of the acknowledged "defects," so-called, in her title. The vendee McCann did not agree to accept such title as the vendor had, but agreed to buy the land at the price agreed "upon the removal of the present defects" in the vendor's title. It appears from the evidence in the case that the vendor had no title to the lands, that it was held entirely by third persons. That

it was acquired by persons with whom the defendant was associated in business, but under such circumstances that one of them, the defendant Treadwell, acquired the title to an undivided half interest without any knowledge of the contract alleged to have existed between the complainant and McCann. In this statement we do not mean to suggest that knowledge by Treadwell of the existence of the contract would have destroyed his good faith in the transaction, because he acquired his interest from persons who independently of Mrs. Ware and McCann held the title to the property and had a right to convey it. This is also true as to the defendant Acline Farms, which acquired the remaining undivided half interest. This was acquired through the agency of Mr. Sandlin and Mr. Dewey, the latter being the president of the Acline Farms, of which McCann was a stockholder, and the former who was also a stockholder and the person who acted for McCann in the transaction with Mrs. Ware. But these facts did not place McCann in a situation which would deny him the favorable consideration of a court of equity to which application is made for the specific performance of the contract. Yet the court by its decree ordered the enforcement of the contract against the vendee without any regard to the vendors entire, not partial, failure of title compelling McCann the vendee to take an undivided half interest held by the corporation, erroneously decreed to be held in trust for the complainant and to pay the full price as agreed. Under ordinary circumstances where the vender has something to give, but less than what he contracted to give, such course is extremely unjust and inequitable. See Pomeroy's Contracts, Specific Performance (2nd ed.), Sec. 434.

In the case at bar the purchaser McCann was not only unwilling to take a partial interest, but denied that the vendor has any interest or title whatsoever to convey. The chancellor found that the complainant had only an undivided half interest and that was held in trust by the Acline Farms for her benefit. This finding we think was erroneous, being wholly unsupported by the evidence, yet the decree requires McCann to accept that interest, pay the full price agreed to be paid for the entire interest, and to pay interest on that amount at 8% per annum from the date of the contract, when confessedly by all parties the vendor could not have conveyed a good title to any interest whatsoever in the land.

The decree in so far as it orders a specific performance of the contract is erroneous upon its face, it rests upon no equitable ground or consideration, it is unsupported by any evidence. In so far as it decrees a dismissal of the bill against Treadwell it is correct and is hereby affirmed; in all other respects it is reversed with directions to dismiss the bill.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.